# United States District Court

_____CENTRAL_____   DISTRICT OF _____CALIFORNIA_____

| | |
|---|---|
| **In the Matter of the Seizure of**<br>(Address or Brief description of property or premises to be seized)<br>Up to $1,669,464.00 on deposit in Cathay Bank account number 70065101 | **APPLICATION AND AFFIDAVIT<br>FOR SEIZURE WARRANT**<br><br>CASE NUMBER:   2:23-MJ-6440 |

**I, Fred D. Apodaca, being duly sworn depose and say:**

**I am a Special Agent with the United States Secret Service, and have reason to believe that**

**in the _____CENTRAL_____ District of _____CALIFORNIA_____
there is now concealed a certain person or property, namely** (describe the person or property to be seized)

Up to $1,669,464.00 on deposit in Cathay Bank account number 70065101

**which is** (state one or more bases for seizure under United States Code)

subject to seizure and forfeiture under 18 U.S.C. §§ 981 (a)(1)(C), (b)(2), 982(b), 984 and 21 U.S.C. §§ 853(e) and 853(f)

**concerning a violation of Title** 18 **United States Code, Section(s)** 1343.

**The facts to support a finding of Probable Cause for issuance of a Seizure Warrant are as follows:**

**Continued on the attached sheet and made a part hereof.     X  Yes __ No**

  ___S.A. Fred D. Apodaca_____
  **Attested to by the applicant in accordance with the
  Requirements of Fed. R. Crim. P. 4.1 by telephone**

**Sworn before me in accordance with requirements of
Fed. R. Crim. P. 4.1 by telephone**

| | |
|---|---|
| _____<br>**Date** | **Los Angeles, California**_____<br>**City and State** |
| **Hon. Maria A. Audero, U.S. Magistrate Judge**<br>**Name and Title of Judicial Officer** | _____<br>**Signature of Judicial Officer** |

**AUSA Ryan Waters;tk**

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEIZURE WARRANT**

I, Fred D. Apodaca, being duly sworn, hereby depose and state as follows:

**I.**

**INTRODUCTION**

1. I am a Special Agent ("SA") with the United States Secret Service ("USSS") assigned to the Los Angeles Field Office Asset Forfeiture Squad. I have been employed by the USSS since February 2008. In this capacity, I am responsible for investigating violations of federal criminal law, particularly those laws found in Title 18 of the United States Code and relating to financial institution fraud, credit card fraud, identity theft, and stolen U.S. Treasury Checks. I have received formal training at the Federal Law Enforcement Training Center and the USSS James J. Rowley Training Center. My training includes, but is not limited to, various investigative techniques and tactics regarding financial crimes, including credit card fraud, identity theft, illegal methods used to obtain credit cards, bank loans, and other lines of credit, and methods used to launder and conceal the proceeds. Prior to my employment with the U.S. Secret Service, I was employed for four years as a Financial Analyst with the Federal Bureau of Investigation.

2. Unless stated otherwise, I have personal knowledge of the matters set out in this affidavit. To the extent that any information in this affidavit is not within my personal knowledge, it was made known to me through reliable law enforcement sources, and I believe it to be true.

3. The facts set forth in this affidavit are based upon my own personal observations, my training and experience, and information obtained during this investigation from other sources, including: (a) statements made or reported, directly or indirectly, by various witnesses with personal knowledge of relevant facts, including other law enforcement officers; (b) records obtained during the course of this investigation; and (c) interviews conducted by other USS special agents.

4. This affidavit is intended to show that there is sufficient probable cause for the requested seizure warrant and does not purport to set forth all my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only. All figures, times, and calculations set forth herein are approximate.

**II.**

**PURPOSE OF AFFIDAVIT**

5.    This affidavit is offered in support of an application for a warrant to seize:

a.    Up to $1,669,464.00 (the "Subject Funds") in Cathay Bank[1] account number 70065101 ("Subject Account"), held in the name of Selead Global Trade Incorporated ("Selead").

6.    Based on the facts set forth below, there is probable cause to believe that the Subject Funds represent proceeds or are involved in violations of 18 U.S.C. § 1343 (Wire Fraud), which constitutes "specified unlawful activity" pursuant to 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(B).  Specifically, there is probable cause to believe that the Subject Funds are proceeds of romance scams (*i.e.*, confidence frauds[2]), and social engineering scams,[3] perpetrated against numerous victims.  Therefore, the

---

[1] Cathay Bank is headquartered in Los Angeles, California, within this Judicial District.

[2] According to Blackstone's Criminal Practice, confidence frauds involve a victim transferring money and/or property as a result of being deceived or misled by the offender.

[3] Social engineering is a method used to manipulate victims into performing certain actions or providing confidential information. When successfully executed, social engineering techniques can cause a victim to send money to someone whom he or she met on a dating website or to provide confidential information such as his or her personal identifiable information and bank account information.  Additionally, victims sometimes serve as money mules, individuals recruited to receive and transfer money acquired from criminal activities on behalf of criminals and money launderers.

3

Subject Funds are subject to seizure pursuant to 18 U.S.C. § 981 (b)(2) and forfeiture pursuant to 18 U.S.C. § 981 (a)(1)(C).

7. In addition, there is probable cause to believe that the Subject Funds are subject to seizure and forfeiture to the United States pursuant to 18 U.S.C. § 982(b) and 21 U.S.C. § 853(f) because the funds would, in the event of conviction on the alleged underlying offenses, be subject to forfeiture, and an order under section 21 U.S.C. § 853(e) would not be sufficient to assure the availability of the property for forfeiture.

8. To the extent that the Subject Funds are not the actual monies traceable to or involved in the illegal activities identified herein, the government alleges that these funds are identical property found in the same account as the property traceable to or involved in the illegal activities, rendering these funds subject to forfeiture pursuant to 18 U.S.C. § 984 (forfeiture of fungible property).

## III.

### SUMMARY OF PROBABLE CAUSE

9. USSS has interviewed multiple victims of romance or confidence frauds who transferred funds based on fraudulent pretenses directly into the Subject Account. This account was first identified as suspicious in November 2023, after a Cathay Bank ("Cathay") investigator flagged suspicious activity in the

4

Subject Account with multiple large deposits within a short time and multiple same day withdrawals. Given the suspicious activity on the account, Cathay contacted USSS for further investigation.

## IV.

## **STATEMENT OF PROBABLE CAUSE**

HISTORY OF SUBJECT ACCOUNT

10. On or about July 18, 2023, the Subject Account was opened in the name Selead Global Trade Incorporated, with an identified address of 64 College Street, Clinton, NY 13323, and Zaihua Li ("Li") identified as the only authorized signer.

CONFIDENCE AND ROMANCE SCAM VICTIMS

11. As described in further detail below, fraud victims interviewed by USSS have related similar stories about having been lured into an online relationship with a person whom they had never met in person. The victims were then induced to transfer funds to a bank account by their online "friend," except the account is controlled by criminals.

12. **Victim R.J.:** In December 2023, I spoke to victim R.J. of Trumbull, CT, regarding an August 3, 2023, $42,000.00 wire transfer sent to the Subject Account. In June 2023, R.J. received a friend request on Facebook from a person who went by the name Eva Novara ("Novara"). R.J. accepted the friend request because Novara claimed to be recently arrived from Poland and R.J. is also Polish. For the first few weeks of communicating,

5

they discussed language, culture, and the Polish church, where R.J. is a member. Novara claimed to work and live in New York City, and they made plans to meet and have dinner along with R.J.'s wife. Ultimately, Novara and R.J. never met in person. Initially, all communication was via Facebook but several weeks later R.J. and Novara began to communicate exclusively via WhatsApp.

    13.  In August 2023, Novara brought up the topic of crypto currency investing. Novara claimed that her uncle was knowledgeable in this field and had guided her on what investments to buy and sell. Novara invited R.J. to join her in investing. Initially, R.J. was hesitant to invest since he knew very little about crypto currency.  Novara told R.J. she would deposit $5,000.00 in his crypto currency account on the trading platform Meta Mask, so he could see how his investments can yield significant returns. On the Meta Mask site, Novara directed R.J. to three different domain name sites that he could use to access his account and trade crypto currency, as follows: 1) www.cbsumax.com; 2) www.web3cell.com; and 3) www.wed3ab.com. Novara guided R.J. through a few trades and after R.J. checked his initial $5,000.00 account balance, all trades were purportedly profitable.  R.J. does not know if Novara ever deposited the $5,000.00 she claimed to have deposited into his account. R.J. would obtain, via text message from a purported

6

customer service representative of the various domain names, websites where to send his investment funds. Feeling more comfortable with the process, R.J. made the following wire transfer investments in August 2023: 1) On 8/3/22, $42,000.00 to the Subject Account; and 2) On 8/21/23, $110,000.00 to an account held in the name of Collapsar Inc., at Cathay Bank. In September 2023, R.J. was suspicious as to why he was using different domain names on the Meta Mask site to access his account. R.J. asked Novara and she claimed it was for security reasons because people were trying to hack into the system and funds had to be wired to intermediary accounts at Cathay Bank. Novara described this transaction as "C to C", which Novara defined as customer to customer. Novara explained to R.J. that he needs to send U.S. dollars to accounts at Cathay Bank, and the bank in turn sends funds to the Meta Mask domain names to invest in crypto currency.

14. In September 2023, R.J. checked his account balance and learned it was purportedly worth $600,000.00. R.J. began to realize his investments were not legitimate when he attempted to withdraw funds and was told his account would be frozen unless he deposited a total of $1 million, under the guise of a "bonus program," which offered rewards in exchange for adding more deposits. R.J. attempted to contact Novara about the additional deposit request but was unsuccessful in reaching her. Novara's

7

Facebook page is no longer viewable and all R.J.'s chats with Novara have been deleted from WhatsApp.

15. Based on my training and experience, I believe R.J. is a victim of a confidence and romance scam, and the $42,000.00 transferred to the Subject Account on August 3, 2023, represents fraudulent proceeds of such a scam.

16. **Victim R.M.:** In December 2023, I spoke to victim R.M. of Chesterfield, VA, regarding a July 28, 2023, $71,000.00 wire transfer sent to the Subject Account. R.M. advised he was contacted in May 2023 via WhatsApp by a person who went by the name Irene Kim ("Kim"). Kim told R.M. she was Korean, 35 years old and owned a fashion design business in New York City. At first R.M. considered his text message communication with Kim to be on a friendly basis, but after several months of communicating R.M. felt it was developing into a romantic relationship. On several occasions Kim and R.M. discussed getting married and planned to meet for the first time in August 2023. Ultimately, they never met in August 2023 as Kim told R.M. that her uncle had passed away and had to return to Korea. R.M. and Kim planned other times to meet but Kim would usually find a reason to cancel those meetings as well.

17. In July 2023, Kim told R.M. she had an aunt who traded crypto currency in sixty-second intervals and told R.M. he should invest. Kim told R.M. he could earn a substantial profit

and told him to use the crypto currency trading platform ZTXBIVS.com. R.M. agreed to invest and sent the following wire transfers: 1) 7/13/23, $100,000.00 wire transfer to an account held in the name of Nefeliba, at JP Morgan Chase Bank; and 2) On 7/28/23, $71,000.00 wire transfer to the Subject Account. R.M was given bank account wiring information via text message from a purported customer service representative on the ZTXBIVS.com website.

18. In September 2023, R.M. checked his account balance and learned his account was now purportedly worth $2.2 million. At this time R.M. requested a withdrawal of some of his funds but was told he must pay a $238,000.00 tax prior to any withdrawal. R.M. asked if the $238,000.00 could be withdrawn from his account balance but was once again told he must wire the amount prior to any withdrawal. R.M. contacted Kim and told her about the tax amount he was being asked to send. Kim told R.M. to obtain a reverse mortgage on his property and to pay the taxes. R.M. told Kim he will not send any more funds, and a few days after speaking to Kim, R.M. could no longer access the ZTXBIVS.com website.

19. Based on my training and experience, I believe R.M. is a victim of a confidence and romance scam and the $71,000.00 transferred to the Subject Account on July 28, 2023, represents fraudulent proceeds of such a scam.

20. **Victim J.J.:** In December 2023, I spoke to victim J.J. of Cologne, MN, regarding an August 10, 2023, $48,000.00 wire transfer sent to the Subject Account. In March 2023, J.J. met a 42-year-old female from New York City who went by the name Julie Ann Mich ("Mich"), on the dating website Tinder. Mich and J.J. had regular communication via text message from March 2023 to September 2023.

21. In August of 2023, Mich told J.J. she had an uncle in San Diego, CA who taught her how to trade crypto currency and that he could earn significant profits if he allowed her to direct his investments. J.J. agreed to invest and in August 2023, Mich provided J.J. bank routing information, which he used to send a $48,000.00 wire transfer to the Subject Account. Mich never told J.J. which crypto currency trading platform she would be using. Since sending his $48,000.00 in August 2023, J.J. has attempted to communicate with Mich but has been unsuccessful in reaching her.

22. Based on my training and experience, I believe J.J. is a victim of a confidence and romance scam and the $48,000.00 transferred to the Subject Account on August 10, 2023, represents fraudulent proceeds of such a scam.

TRACING FRAUD PROCEEDS INTO THE SUBJECT ACCOUNTS

23. From my review of the Subject Account bank statements, the following fraudulent proceeds described above were deposited into the Subject Account:

   a. On 8/3/23, a wire transfer from Victim R.J. in the amount of $42,000.00;

   b. On 07/28/23, a wire transfer from Victim R.M. in the amount of $71,000.00;

   c. On 08/10/23, a wire transfer from Victim J.J. in the amount of $48,000.00.

24. In addition, the USSS has identified additional suspicious deposits into the Subject Account but has been unsuccessful in contacting and interviewing the individuals associated with the deposits/transfers, who I believe to be victims of this scheme. These other potential victims made approximately $1,508,464.00 in suspicious deposits into the Subject Account (the "Additional Deposits"). From these Additional Deposits, two were from victims who reside, respectively, in Los Angeles, CA and Pomona, CA.

25. The Additional Deposits share similarities with the above-described fraud victim transfers into the Subject Account, in that they (1) were made in the same time period as the above-described transfers of fraud proceeds; (2) were made from individuals in locations throughout the United States without

11

the kind of geographic patterns which might be expected from a legitimate business; (3) were made from people who had not previously deposited funds into the Subject Account; and (4) were often made in large round-dollar amounts, which are inconsistent with normal business transfers (which typically reflect taxes and other costs). Accordingly, and based on my training and experience, I believe the Additional Deposits are also fraud proceeds from victims whose identity the USSS has yet to confirm.

## V.
## CONCLUSION

26. Based upon the foregoing, there is probable cause to believe that the Subject Funds represent proceeds derived from violations of 18 U.S.C. § 1343 (Wire Fraud), which constitutes "specified unlawful activity" pursuant to 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(B). Therefore, the Subject Funds are subject to seizure pursuant to 18 U.S.C. § 981 (b)(2) and forfeiture pursuant to 18 U.S.C. § 981 (a)(1)(c).

27. In addition, there is probable cause to believe that the Subject Funds are subject to seizure and forfeiture to the United States pursuant to 18 U.S.C. § 982(b) and 21 U.S.C. § 853(f) because the funds would, in the event of conviction on the alleged underlying offenses, be subject to forfeiture, and an order under section 21 U.S.C. § 853(e) would not be

sufficient to assure the availability of the property for forfeiture.

28.  To the extent that the Subject Funds are not the actual monies traceable to or involved in the illegal activities identified herein, these funds are identical property found in the same account as such property, rendering these funds subject to forfeiture pursuant to 18 U.S.C. § 984.

FRED D. APODACA
Fred D. Apodaca
Special Agent
United States Secret Service


Subscribed and sworn before me
on this _____ day of December 2023


HONORABLE MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE